UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


ORQUIDIA PINO,

                Plaintiff,

vs.                   **Case No.  2:06-cv-613-FtM-29SPC**

SCHOOL  BOARD  OF  COLLIER  COUNTY,
FLORIDA,

                Defendant.
_____
TERESITA RODRIGUEZ,

                Plaintiff,

vs.                   Case No.  2:06-cv-614-FtM-29SPC

THE  SCHOOL  BOARD  OF  COLLIER  COUNTY,
FLORIDA,

                Defendant.
_____
ALDELFO RIVES,

                Plaintiff,

vs.                   Case No.  2:06-cv-615-FtM-29DNF

SCHOOL  BOARD  OF  COLLIER  COUNTY,
FLORIDA,

                Defendant.
_____


**OPINION AND ORDER**

_____This matter comes before the Court on defendant's Motion to
Dismiss Count III of Plaintiff, Teresita Rodriguez's Supplemental
Complaint (Doc. #29), filed on September 10, 2007; plaintiff's
Motion for Partial Summary Judgment (Doc. #29) as to Teresita

Rodriguez, filed on August 17, 2007; and defendant's Motion for Summary Judgment (Doc. #35) as to all plaintiffs, filed on October 4, 2007. Plaintiff Teresita Rodriguez did not file a response to the motion to dismiss; defendant filed an Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. #33); and plaintiff filed a Memorandum of Law in Opposition to Summary Judgment (Doc. #46) along with a Notice of Scrievner's [sic] Error (Doc. #48). Defendant was permitted to file a Reply (Doc. #54), however, it was subsequently stricken upon review of plaintiffs' Objection (Doc. #55). (See Doc. #56.)

Teresita Rodriguez (Rodriguez), Orquidia Pino (Pino), and Adelfo Rives (Rives)(collectively "plaintiffs") are Hispanic and of Cuban national origin. Each works as a custodian at the Tommie Barfield Elementary School in Marco Island, Florida (the Tommie Barfield School). Plaintiffs have each worked at the Tommie Barfield School for six to eight years. The Tommie Barfield School is under the authority of the School Board of Collier County, Florida. All three plaintiffs allege race and national origin discrimination based upon a hostile work environment; Rodriguez also alleges a claim of retaliation and sexual harassment. All claims are based on the alleged conduct of John Shea, who was the Plant Operator at the Tommie Barfield School until March 10, 2005.

**I.**

As a preliminary matter, the Court notes that the Supplemental Complaint filed by plaintiff Teresita Rodriguez incorporates all of the allegations from each of the prior counts into the succeeding counts.  Since this constitutes a shotgun pleading,[1] the Court is obligated to *sua sponte* address the matter before the case may proceed to trial.  See, e.g., Byrne v. Nezhat, 261 F.3d 1075, 1129 (11th Cir. 2001).  To correct the Supplemental Complaint, paragraphs 13 and 21 will be stricken and the case will otherwise proceed.

## II.

Defendant School Board of Collier County, Florida (the School Board or defendant) argues that Count III of plaintiff Teresita Rodriguez's Supplemental Complaint (Doc. #38) fails to state a claim of retaliation under § 2000e-3(a) of Title VII of the Civil Rights Act of 1964.  The Court disagrees.

## A.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.  Erickson v. Pardus, 127 S. Ct. 2197 (2007); Christopher v. Harbury, 536 U.S. 403, 406

---

[1]Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002)("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts [ ] contain irrelevant factual allegations and legal conclusions.")

(2002).   To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)(citing FED. R. CIV. P.  8).  See also Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (May 21, 2007)(citations omitted); Erickson v. Pardus, 127 S. Ct at 2200; Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  Id.  Dismissal is warranted under FED. R. CIV. P.  12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.   Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

**B.**

Under § 2000e-3(a), it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  For the purposes of the motion, defendant assumes that a protected expression occurred and that the adverse action was causally related to the protected expression. Defendant argues, however, that no adverse employment action was taken against Rodriguez, and thus no retaliation cause of action is stated.

While previous Eleventh Circuit law required plaintiff to establish an adverse employment action as an element of a retaliation claim, that law was changed by <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, ___ U.S. ___, 126 S. Ct. 2405 (2006).  <u>Clemons v. Alabama Dep't of Human Res.</u>, 201 Fed. Appx. 715 (11th Cir. 2006); <u>Bothwell v. RMC Ewell, Inc.</u>, 226 Fed. Appx. 925 (11th Cir. 2007). In <u>White</u> the Supreme Court rejected the proposition that retaliation claims were limited to situations involving adverse employment actions.  <u>White</u> found that the anti-retaliation provision protects a person from conduct which a reasonable employee would have found to be materially adverse, i.e., conduct that well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination.  <u>White</u>, 126 S. Ct. at 2414-15.

Taking all allegations in the Supplemental Complaint as true, Rodriguez engaged in statutorily protected activity when she filed the federal Complaint (2:06-cv-614; Doc. #1) on or about November 13, 2006.  During the week of July 30, 2007, Rodriguez's supervisor, Ricardo Brito, stated that Rodriguez would be fired if she did not prevail in her lawsuit.  He made no further statements but did separate or distance himself from plaintiff thereafter. Rodriguez states that she has been living in fear since the threat of retaliation.  The Court finds that this alleged conduct might well dissuade a reasonable employee from engaging in protected activity.  <u>See</u> <u>White</u>, 126 S. Ct. at 2415-16 (discussing social impact in workplace).  Accordingly, the motion to dismiss Count III of the Supplemental Complaint is denied.

## III.

### A.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003).

**B.**

The School Board asserts that summary judgment must be granted in its favor because none of the plaintiffs can establish they

filed timely charges of discrimination with the Equal Employment Opportunity Commission (EEOC).

Filing a timely charge with the EEOC is a non-jurisdictional prerequisite to bringing a suit under Title VII. Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 448-49 (11th Cir. 1993). "[O]nly those unlawful employment practices that are complained of in a timely-filed charge of discrimination to the EEOC can form the basis of Title VII liability." Ledbetter v. Goodyear Tire & Rubber Co., Inc., 421 F.3d 1169, 1178 (11th Cir. 2005). A timely charge of discrimination in a deferral state such as Florida must be filed within "300 days of the last discriminatory act. [ ] Accordingly, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable." EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002).

Where the claims challenge discrete discriminatory or retaliatory acts, the timely-filing requirement erects an absolute bar on recovery for acts occurring outside the limitations period. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-114 (2002); Ledbetter, 421 F.3d at 1178-79. Where claims are based on an alleged hostile work environment, behavior outside the statutory time period can be considered for purposes of assessing liability so long as an act contributing to the hostile environment takes place within the statutory time period. Morgan, 536 U.S. at 105, 115; Chambless v. Louisiana-Pacific Corp., 481 F.3d 1345, 1349-50

(11th Cir. 2007); Ledbetter, 421 F.3d at 1179.  Therefore, to be timely, "the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." Morgan, 536 U.S. at 118.

In this case, each Complaint and the Supplemental Complaint allege that each plaintiff was subjected to an ongoing pattern of racial discrimination by John Shea beginning October, 2004. Therefore, the Complaints allege hostile work environment claims, and behavior outside the statutory time period can be considered for purposes of assessing liability so long as an act contributing to the hostile environment takes place within the statutory time period.

**(1)**

Rodriguez signed a Charge of Discrimination (Doc. #36-6, p. 24) on December 28, 2005, and filed it with the EEOC on an unspecified date.  By letter dated May 3, 2006 (Doc. #36-6, p. 25), Rodriguez's attorney sent a revised Charge of Discrimination to the EEOC at the EEOC's request. (Doc. #36-6, p. 26.)  This revised Charge of Discrimination alleged the earliest discrimination was May 15, 2003 and the latest was February 28, 2006, and was a "continuing action."  Assuming that December 28, 2005 is the date of filing with the EEOC[2], measuring back from that date means the

---

[2]Defendant assumes that the dates the Charges were signed are the dates they were filed with the EEOC.  (Doc. #35, p. 2.)

300-day period began to run on March 3, 2005.  The issue therefore is whether Rodriguez has shown that an act contributing to the hostile environment took place on or after March 3, 2005.

It is undisputed that the offending conduct was committed only by Shea.  It is also undisputed that Shea was reassigned from the Tommie Barfield School on March 10, 2005, and that no offending conduct occurred after his departure.  Plaintiff testified that Shea's offending conduct began when he first got to the school and occurred on a daily basis, or all the time, or on a bunch of times. While there was only a one week window during which the offending conduct must have occurred to satisfy the 300 day requirement, the record evidence does not establish that it is undisputed that no offending conduct occurred within that time frame.  Accordingly, defendant is not entitled to summary judgment based on this issue.

**(2)**

Pino also signed a Charge of Discrimination on or about December 28, 2005 (Doc. #36-2, p. 10) and filed it with the EEOC on an unspecified date.  The Charge of Discrimination checked the "continuing action" box with no specific "earliest" or "latest" dates.  Assuming that December 28, 2005 is the date of filing with the EEOC, measuring back from that date means the 300-day period began to run on March 3, 2005.  The issue therefore is whether Pino has shown that an act contributing to the hostile environment took place after March 3, 2005.  For the same reasons stated above as to

Rodriguez, the Court finds that there is sufficient evidence to defeat defendant's summary judgment motion.

### (3)

Rives signed a Charge of Discrimination on or about January 9, 2006 (Doc. #36-4, p. 8) and filed it with the EEOC on an unspecified date.   The Charge of Discrimination checked the "continuing action" box with no specific "earliest" or "latest" dates.  Assuming that January 9, 2006, is the date of filing with the EEOC, measuring back from that date means the 300-day period began to run on March 15, 2005.  The issue therefore is whether Rives has shown that an act contributing to the hostile environment took place after March 15, 2005.  Since it is undisputed that Shea left on March 10, 2005, and there was no subsequent offending conduct, Rives cannot establish that an act contributing to the hostile environment took place after March 15, 2005.  Thus his claim would be time-barred.

Under some circumstances, however, a plaintiff who has not himself filed a timely EEOC charge may rely on another plaintiff's charge.  Generally, this "piggybacking" is allowed where (1) the charge being relied upon is timely and not otherwise defective, and (2) the individual claims of the filing and non-filing plaintiffs arose out of similar discriminatory treatment in the same time frame.  Calloway, 986 F.2d at 449-50.  The Court finds that both elements are satisfied by Rives.  The charges by the two other

plaintiffs were timely, they were not otherwise defective, and they arose out of similar discriminatory treatment by the same supervisor during the same time period.   Therefore, summary judgment will be denied on this issue as to Rives as well.

**IV.**

Defendant also asserts that it is entitled to summary judgment because the allegedly hostile work environment was not severe or pervasive enough.   While defendant concedes that "Plaintiffs' dignity was violated and . . . they may have been treated rudely and roughly," (Doc. #35, p. 14), it asserts that more is required than the vague allegations plaintiffs present.

Title VII "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)(citations omitted).   To establish a claim of hostile work environment, a plaintiff must show, among other things, that the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269 (11th Cir. 2002).   The employee must "subjectively perceive" the harassment and the subjective perception must be objectively reasonable from the perspective of a "reasonable person in the plaintiff's position." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).   This requires looking at all the

circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with the employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "Not all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII." Vinson, 477 U.S. at 67 (quoting Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1972). Title VII is not a "general civility code for the American workplace," Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 75-76 (1998), and "teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment," Washington v. Kroger Co., 218 Fed. Appx. 822, 825 (11th Cir. 2007)(citing Mendoza v. Borden, Inc., 195 F.3d at 1245). Normally, spoken language cannot be equated to national origin, however, if the individual is unable to speak English this may "well be an immutable characteristic like skin color, sex or place of birth." Garcia v. Gloor, 618 F.2d 264, 270 (5th Cir. 1980).[3]

Although there is no job requirement that employees have fluency in English, Shea told Rodriguez approximately 2-4 times not

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to speak Spanish on the job.  Shea made fun of Rodriguez's language in front of children at the school and in front of other people, and would say words like "stupid Hispanic", "Fucking Spanish," and "stupid Cuban."  (Doc. #36-7, pp. 9-10, 26-27.)  When Rodriguez would try to speak in English, Shea would tell her to speak English because he didn't understand Spanish and would point at her in front of others saying "Working, working."  (Id. at p. 28.) Rodriguez felt like trash, and wanted to be respected and valued as a person.  (Id. at pp. 34, 35, 39.)  Parents would ask Rodriguez why she allowed Shea to humiliate her and treat her in that manner and she would start crying.  (Id. at p. 26.)  As to Rives, Shea would reprimand Rives for speaking Spanish on a daily basis.  (Doc. #36-5, p. 16.)  Shea called Rives a "stupid Cuban" and embarrassed him in front of the parents of the children.  (Doc. #36-5, pp. 23, 27.)  Shea threatened termination approximately 8-10 times.  (Id. at p. 22.)  Shea threw cones and shoved tables towards Pino, and would mistreat plaintiffs in front of everybody.  (Doc. #36-3, pp. 18-19.)  Shea called Pino a "stupid Cuban" "a bunch of times," id. at pp. 20, 27, and threatened to fire plaintiffs 4-5 times, id. at p. 23.

Plaintiffs subjectively considered the use of "stupid Cuban," "stupid Hispanic," and "Fucking Spanish" to be humiliating, and testimony shows that Shea frequently uttered the terms.  Plaintiffs Rives and Pino further allege that they were threatened with

-14-

termination on numerous occasions while working and Rodriguez testified that she would start crying when the issue was raised even though she received good evaluations by Mr. Shea.  There are also some allegations of throwing of cones and pushing a table that may support a finding that the harassment was physically intimidating taken as a whole, even though not racially-related. Upon review of all the facts presented, the Court finds that a reasonable jury could find that plaintiffs were exposed to a hostile work environment based on race or national origin.

## V.

Defendant also asserts that it is entitled to summary judgment on Rodriguez's sexual harassment claim because the conduct was not severe or persuasive enough.  Sexual harassment cases are analyzed under the same standards applied to racial discrimination cases, as outlined above.  Faragher v. City of Boca Raton, 524 U.S. 775, 787 n.1 (1998).  Rodriguez alleges that Shea touched her buttocks twice.  (Doc. #36-7, pp. 30.)  Dr. Westberry told Rodriguez that she "could say that that [sic] was an accident", but Rodriguez did not think it was an accident.  (Id. at pp. 29-30.)  These incidents occurred in the cafeteria, and there was one incident where Shea touched Rodriguez's breast after hours in the bathroom.  (Id. at pp. 30-31.  Taken as a whole, a reasonable jury could find the incidents were frequent, severe and pervasive enough to constitute

a hostile work environment, and therefore Rodriguez's factual allegations are sufficient to survive a summary judgment motion.

**VI.**

Plaintiff Rodriguez seeks summary judgment as to defendant's First Affirmative Defense. After reviewing the motion and defendant's response, the Court is satisfied that there are disputed issues of material fact which preclude summary judgment as to this defense.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Paragraphs 13 and 21 of the Supplemental Complaint are hereby **stricken.**

2.   Defendant's Motion to Dismiss Count III of Plaintiff, Teresita Rodriguez's Supplemental Complaint (Doc. #29) is **DENIED.**

3.   Defendant's Motion for Summary Judgment (Doc. #35) is **DENIED.**

4.   Plaintiff Teresita Rodriguez's Motion for Partial Summary Judgment (Doc. #29) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of January, 2008.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record